GLEN MILLER,

Plaintiff,

VERSUS

NASSAU HEALTH CARE CORPORATION,

Defendant.

**MEMORANDUM AND ORDER**
July 11, 2012

JOSEPH F. BIANCO, District Judge:

Plaintiff Glen Miller ("Miller" or "plaintiff") brought this action against the Nassau Health Care Corporation ("NHCC" or "defendant"), alleging violations of Miller's constitutional rights pursuant to 42 U.S.C. § 1983.[1] Plaintiff alleges that defendant showed deliberate indifference to the plaintiff's serious medical need when it (1) allegedly administered the wrong medication to the plaintiff the evening before he vomited blood, and (2) failed to transport the plaintiff to the hospital when he first reported his dizziness and vomiting in the early morning hours of October 18, 2008.

The defendant now moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the grounds that (1) no rational jury could find that defendant acted with deliberate indifference to a serious medical need, and (2) plaintiff has not alleged, or provided any evidence of, a policy, custom, or practice that led to a violation of his constitutional rights. For the reasons set forth below, the Court agrees and

---

[1] Plaintiff originally brought the action against the County of Nassau ("County"), the New York City Department of Corrections ("NYC Corrections"), and the New York City Department of Health and Hospital ("NYC Health"). Plaintiff submitted a letter, dated January 9, 2009 indicating that he wanted to "vacate" NYC Corrections and NYC Health and file an amended complaint against the County and NHCC. (Letter from Pl., Jan. 9, 2009, ECF No. 12.) Accordingly, the Court terminated NYC Corrections and NYC Health as defendants by Order dated February 5, 2010. Plaintiff filed an amended complaint on February 22, 2010 against the County. On May 12, 2010, plaintiff filed a letter stating that he intended to sue NHCC, not the County. (Letter from Pl., May 12, 2010, ECF No. 35.) At a telephone conference on May 13, 2010, plaintiff indicated that he would file an amended complaint naming NHCC as the defendant. On May 28, 2010, plaintiff filed an amended complaint naming only NHCC as a defendant.

grants defendant's motion for summary judgment in its entirety. In particular, plaintiff's own sworn testimony (and the uncontroverted medical records) demonstrates that NHCC administered only Tylenol to the plaintiff on October 17, 2008. However, even assuming *arguendo* that NHCC employees administered the wrong medication to plaintiff, no rational jury could conclude that NHCC acted with deliberate indifference to plaintiff's medical needs because there is no evidence that NHCC employees acted "while actually aware of a substantial risk that serious inmate harm [would] result." *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). Additionally, the Court concludes that no rational jury could conclude that NHCC was deliberately indifferent to plaintiff's medical needs when its employee sent plaintiff back to his cell after plaintiff had vomited a clear liquid and complained of dizziness. Even construing the facts most favorably to plaintiff, no rational jury could find that the employee failed to provide reasonable care or find that the employee acted "with a sufficiently culpable state of mind." *Id.* Similarly, it is undisputed that plaintiff was immediately taken to the hospital once he started vomiting blood and, thus, no constitutional violation could have occurred at that juncture either. Finally, the *Monell* claim against the NHCC cannot survive summary judgment because there is no underlying Eighth Amendment violation against the defendant's employees, and, in any event, because there is no evidence of a policy, practice, or custom at the NHCC that deprived plaintiff of his constitutional rights.

I. BACKGROUND

A. Factual Background

The Court has taken the facts set forth below from the defendant's Local Civil Rule 56.1 Statements of Facts ("Def.'s 56.1").[2] Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005).

Miller entered Nassau County Correctional Center ("NCCC") on or about July 19, 2008, and was seen at Medical Intake. (Def.'s 56.1 ¶ 1.)[3] At Medical Intake,

---

[2] The Court notes that plaintiff has failed to file and serve a response to defendant's Rule 56.1 statement of facts, in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04 Civ. 2935 (ILG), 2006 U.S. Dist. LEXIS 23397, at *4-5 (E.D.N.Y. Apr. 25, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Accordingly, in the exercise of its broad discretion and given plaintiff's *pro se* status, the Court will overlook this defect and will deem admitted only those facts in defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy*, 292 F. Supp. 2d at 504. Thus, in the instant case, although plaintiff has failed to submit any response to the Rule 56.1 statement and submitted only a one-page, conclusory opposition to the summary judgment motion, the Court has carefully reviewed the evidence submitted in the moving papers and determined that the undisputed facts demonstrate that his claims create no material issues of fact and cannot survive summary judgment, as set forth *infra*.

[3] At his deposition, plaintiff stated that he arrived at NCCC on July 17, 2008. (Pl.'s Dep. at 6.) The medical records reflect that he was seen by Medical Intake on July 19, 2008. (NCCC Medical Intake Chart.) Whether plaintiff entered NCCC on July 17,

he was asked about his history and was examined with a report of "no current illness" and a "well exam." (*Id.* at ¶ 2.) On October 14, 2008, plaintiff made a sick call request, and was examined by William Kupec ("Kupec"), Physician's Assistant (*Id.* at ¶ 3.) At the time, plaintiff was complaining of a hemorrhoid problem and pain in his shoulder. (*Id.*) Kupec examined the plaintiff, then prescribed Colace, Metamucil, a suppository for plaintiff's hemorrhoid and bowel problem, and Tylenol for his shoulder pain. (*Id.*) Kupec also requested a proctology consult. (*Id.*) Plaintiff started receiving the prescribed medications on October 15, 2008. (*Id.* at ¶ 4.) He received his last dose of Tylenol from the medication nurse around 9:00 p.m. on October 17, 2008. (*Id.*; Plaintiff's Deposition, June 10, 2011 ("Pl.'s Dep.") at 16-17.)

In the early hours of October 18, 2008, plaintiff felt dizzy and vomited a clear liquid. (Def.'s 56.1 ¶ 5.)[4] He requested that Corrections bring him to Medical. (*Id.*) In response, plaintiff was taken to Medical, where he was examined by Perry Intal ("Intal"), Nurse Practitioner, and returned to his cell with instructions to return if the dizziness reoccurred.[5] (*Id.* at ¶ 6; Correctional Health Services, Mental Health Clinic, Progress Note ("Progress Note").)[6]

At 10:45 that same morning, plaintiff was brought back to Medical because he was complaining of dizziness with facial numbness, and reporting that he had vomited. (Progress Note; Def.'s 56.1 at ¶ 7.) David Teer ("Teer"), Nurse Practitioner, examined plaintiff and conducted an EKG. (Def.'s 56.1 ¶ 8.) During the exam, plaintiff vomited blood. (*Id.*) Teer issued a request that plaintiff be transported immediately to Nassau University Medical Center ("NUMC") by ambulance. (*Id.*) Plaintiff was taken to NUMC where he was seen in the emergency room at 12:30 p.m., and admitted to the hospital. (*Id.* at ¶ 9.) After being treated in the hospital, plaintiff was discharged with a diagnosis of gastrointestinal bleeding and osephegitis and prescribed Nexium. (*Id.* at ¶ 10.) During the remainder of his incarceration at NCCC, plaintiff had no further stomach problems and did not complain of dizziness or vomiting. (*Id.* at ¶ 11.)

Plaintiff's opposition is a one-page document in which he alleges that he was given an unlabeled pill on October 18, 2008 that caused him "to get sick." (Pl.'s Opp., Jan. 17, 2012, ECF No. 88.) He alleges that the doctor refused to take him to the "out side hospital" and it "almost cost [him his life." (*Id.*)

B. Procedural Background

*Pro se* plaintiff filed the complaint in this action on October 29, 2009. Plaintiff filed an amended complaint on January 29,

---

2008 or July 19, 2008 is not relevant to the outcome of this motion.

[4] At his deposition, plaintiff stated that it was about midnight when he called for corrections to take him to sick call. (Pl.'s Dep. at 17.) The medical records reflect that plaintiff saw Perry Intal at 6:50 a.m. (Correctional Health Services, Mental Health Clinic, Progress Note.)

[5] Plaintiff asserts that he told the doctor that he was "not feeling well," but the doctor "just told me I am fine." (Pl.'s Dep. at 20.) Plaintiff "went back to [his] cell, dizzy, couldn't walk." (*Id.* at 21.)

[6] Plaintiff contends that he began to vomit again five minutes after returning to his cell. He "kicked on the door to call the C.O." and they "came back and took

me back down." (*Id.* at 21-22.) Once at Medical, plaintiff says he saw the same doctor, who called an ambulance after plaintiff started vomiting blood. (*Id.* at 23.) However, medical records reflect that plaintiff's first visit to Medical was at 6:50 a.m., when he saw Intal, his second visit was at 10:45 a.m., when he saw David Teer, and his admission to NUMC was around 12:30 p.m. (Progress Note; NUMC Physician Attestation Form.)

2010. Plaintiff filed a second amended complaint on February 22, 2010. Plaintiff filed a third amended complaint on May 28, 2010.[7] On April 29, 2011, plaintiff filed a revised Narrative Statement of Facts.

On September 23, 2011, defendant moved for summary judgment, which included the requisite Notice to *Pro Se* Litigants pursuant to Local Rule 56.2. On November 7, 2011, plaintiff filed a letter asking for an extension of time to file his opposition to the motion. On November 10, 2011, the Court granted that motion and gave plaintiff until December 9, 2011 to file his opposition. On December 7, 2011, plaintiff filed another request for an extension of time to respond to the summary judgment motion, and also requested the appointment of counsel. On December 19, 2011, the Court denied the request for the appointment of counsel, but granted plaintiff another extension of time to file his opposition to the summary judgment motion until February 6, 2012. Plaintiff filed a one-page letter on January 17, 2012, which the Court will construe as his opposition. Defendant submitted a letter on February 27, 2012 asking that the Court consider the motion fully submitted. The Court has fully considered the arguments and submissions of the parties.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the

---
[7] It appears that the third amended complaint was meant to supplement the second amended complaint. Therefore, the Court is considering the allegations in both the second and third amended complaints for purposes of this motion.

evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2505 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48, 106 S. Ct. 2505 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

III. DISCUSSION

A. Deliberate Indifference to Serious Medical Need

For the reasons set forth below, the Court grants summary judgment to defendant on plaintiff's Section 1983 claim for deliberate indifference to a serious medical need.

To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

There is no dispute for purposes of this motion that defendant was acting under color of state law. The question presented, therefore, is whether defendant's alleged conduct deprived plaintiff of his Eighth Amendment rights. Plaintiff's second amended complaint contains essentially two allegations in support of his contention that the defendant was deliberately indifferent to his medical needs. The first allegation is that the plaintiff received some unknown medication the evening before he became sick. The second allegation is that medical personnel should have transported the plaintiff when he first reported his dizziness and vomiting in the early morning hours of October 18, 2008.

Defendant argues that, even construing the facts most favorably to plaintiff, its actions do not rise to the level of deliberate indifference as a matter of law. As set forth below, the Court agrees. Even accepting plaintiff's evidence as true and drawing all reasonable inferences in his favor, a rational jury could not conclude that defendant was deliberately indifferent to a serious medical need.

1. Legal Standard

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment" and therefore "states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (quotation marks and citation omitted). As the Second Circuit has explained,

> [t]he Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody. Moreover, under 42 U.S.C. § 1983, prison

officials are liable for harm incurred by an inmate if the officials acted with "deliberate indifference" to the safety of the inmate. However, to state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice.

*Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citations omitted). Within this framework, "[d]eliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment, in violation of the Eighth Amendment, as made applicable to the states through the Fourteenth Amendment." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 236 (2d Cir. 2007). Thus, according to the Second Circuit,

> [d]efendants may be held liable under § 1983 if they . . . exhibited deliberate indifference to a known injury, a known risk, or a specific duty, and their failure to perform the duty or act to ameliorate the risk or injury was a proximate cause of plaintiff's deprivation of rights under the Constitution. Deliberate indifference is found in the Eighth Amendment context when a prison supervisor knows of and disregards an excessive risk to inmate health or safety . . . . Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.

*Ortiz v. Goord*, 276 F. App'x 97, 98 (2d Cir. 2008) (citations and quotation marks omitted); *see also Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) ("Deliberate indifference will exist when an official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)); *Curry v. Kerik*, 163 F. Supp. 2d 232, 237 (S.D.N.Y. 2001) ("'[A]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted))).

In particular, the Second Circuit has set forth a two-part test for determining whether a prison official's actions or omissions rise to the level of deliberate indifference:

> The test for deliberate indifference is twofold. First, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the plaintiff must demonstrate that the defendant prison officials possessed sufficient culpable intent. The second prong of the deliberate indifference test, culpable intent, in turn, involves a two-tier inquiry. Specifically, a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.

*Hayes*, 84 F.3d at 620 (internal citation omitted); *see also Phelps v. Kapnolas*, 308 F.3d 180, 185-86 (2d Cir. 2002) (setting forth two-part deliberate indifference test).

In *Salahuddin v. Goord*, the Second Circuit elaborated on this two-part test, explaining that that the first part is objective and the second part is subjective. 467 F.3d 263 (2d Cir. 2006). In particular, with respect to the first, objective element, the Second Circuit explained:

> The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious. Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Determining whether a deprivation is an objectively serious deprivation entails two inquiries. The first inquiry is whether the prisoner was actually deprived of adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable care. Thus, prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable under the Cruel and Unusual Punishments Clause, and, conversely, failing to take reasonable measures in response to a medical condition can lead to liability.
>
> Second, the objective test asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner. For example, if the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious. Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain. In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower. For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone. Thus, although we sometimes speak of a serious medical condition as the basis for an Eighth Amendment claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability.

467 F.3d at 279-80 (citations and quotation marks omitted); *see also Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 413-14 (S.D.N.Y. 2008).

With respect to the second, subjective component, the Second Circuit further explained:

> The second requirement for an Eighth Amendment violation is subjective: the charged official must act with a sufficiently culpable state of mind. In medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it

7

suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health. Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result. Although less blameworthy than harmful action taken intentionally and knowingly, action taken with reckless indifference is no less actionable. The reckless official need not desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices. But recklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent.

*Salahuddin*, 467 F.3d at 280 (citations and question marks omitted); *see also Jones*, 557 F. Supp. 2d at 414.

2. Plaintiff Alleges that He Received the Wrong Medication

In his second amended complaint and opposition, plaintiff alleges that he was given an unlabeled pill on October 17, 2008 that caused him to vomit blood. However, plaintiff admitted at his deposition that he was given only Tylenol on October 17, 2008. Plaintiff was prescribed Tylenol by Kupac, a Physician's Assistant, on October 14, 2008, for shoulder pain. On October 17, 2008, the nurse brought plaintiff his medication. (Pl.'s Dep. at 16.) Plaintiff stated in his deposition, "the only medication that I received on the 17th was the Tylenol." (*Id.* at 17.) In response to the question "Was it two Tylenol?" the plaintiff said, "Yes." (*Id.* at 32.) In addition, defendant has offered uncontroverted medical records demonstrating that plaintiff was prescribed Tylenol, as well as an affidavit from Teer stating that Kupec prescribed Tylenol for plaintiff's shoulder pain. (Affidavit of David Teer at ¶ 4.) Thus, not only has the plaintiff admitted under oath that he was given only Tylenol, he points to no evidence that he was given the incorrect medicine, other than the fact that he makes a conclusory allegation (contradicting his sworn testimony) that he took an "unlabeled" pill and subsequently vomited blood. Based upon this record, there is insufficient evidence for a rational jury to find that he was given the wrong medicine.

Assuming *arguendo* that plaintiff had, in fact, received the wrong medication, and it caused him to vomit blood, a rational jury could conclude that defendant's actions satisfy the objective prong of the test for deliberate indifference. A rational jury could conclude that administering the wrong medication and causing the patient to vomit blood constitutes a "sufficiently serious" deprivation of medical care. *Salahuddin*, 467 F.3d at 279; *compare Price v. Reilly*, 697 F. Supp. 2d 344, 359 (E.D.N.Y. 2010) (no "objectively serious health risk" where plaintiff received the incorrect dosage of renal medication, but "testified merely that the prescribed dosage was 'wrong' and was 'hurting' him").

However, even assuming *arguendo* plaintiff was given the wrong medication, plaintiff has offered no evidence to support the subjective prong of the test for deliberate indifference, and, accordingly, cannot show that defendant was deliberately indifferent to a serious medical need. As discussed above, the second requirement for an Eighth Amendment violation is subjective: whether

8

the prison official acted with a "sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280 (citation omitted). "Deliberate indifference . . . requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* Even accepting plaintiff's version of events as true and drawing all reasonable inferences in his favor, no rational jury could conclude that defendant acted with deliberate indifference to plaintiff.

According to plaintiff's second amended complaint (which plaintiff subsequently contradicted at his deposition), NCCC officials administered the wrong medication to plaintiff in the evening of October 17, 2008, and plaintiff later vomited blood. Such an action does not satisfy the subjective element of the test for deliberate indifference. *See Rodriguez v. Correct Care Solutions*, 11 Civ. 2285 (PKC)(FM), 2012 U.S. Dist. LEXIS 33444, at *1-2, 7-8 (S.D.N.Y. Mar. 8, 2012) (dismissing complaint alleging deliberate indifference where nurse administered the wrong medication to plaintiff, immediately realized her mistake, advised plaintiff to "drink a lot of water," and plaintiff was not taken to the jail clinic until later that evening, when he vomited blood). Accidentally administering the wrong medication in this situation does not constitute recklessness, and, at worst, reaches only the level of negligence. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." (citing *Estelle*, 429 U.S. at 105-06)). Accordingly, even construing the evidence most favorably to plaintiff, no rational jury could find that defendant was deliberately indifferent to a serious medical need when it allegedly administered the wrong medication to plaintiff on October 18, 2008.

### 3. Plaintiff Alleges that He Was Not Treated Promptly

Additionally, plaintiff alleges that he should have been taken to the hospital after his first visit to Medical, rather than after his second visit. The plaintiff's and defendant's versions of events differ as to the timing and certain details of these visits.

According to the plaintiff, he began to feel dizzy and vomit a clear liquid at approximately midnight on October 18, 2008. (Pl.'s Dep. at 17.) He was taken to Medical, but says that the doctor told him he was fine and to return to his cell. (*Id.* at 20.) Plaintiff contends that he began to vomit again five minutes after returning to his cell. (*Id.* at 21.) He "kicked on the door to call the C.O." and they "came back and took me back down." (*Id.* at 21-22.) Once at Medical, plaintiff says he saw the same doctor, who called an ambulance after plaintiff started vomiting blood. (*Id.* at 23.)

According to the defendant, however, plaintiff's first visit to Medical took place at 6:50 a.m., where he saw Nurse Practitioner Intal and reported that he had felt dizzy and had vomited a clear liquid. In the medical record, which indicates that the time of plaintiff's visit was 6:50 a.m., Intal wrote that plaintiff "[d]oes not feel dizzy at present." (Progress Note.) Plaintiff asserts, however, that he still felt dizzy as he returned to his cell. (Pl.'s Dep. at 21.) Intal's notes reflect that he instructed plaintiff to return to his cell, but to come back to Medical if the dizziness reoccurred. (Progress Note; Def.'s 56.1 at ¶ 6.) Plaintiff, however, asserts that Intal did not tell him to come back if he felt sick again. (Pl.'s Dep. at 20.)

9

According to the medical record, at 10:45 that same morning, plaintiff was brought back to Medical because he was complaining of dizziness with facial numbness, and reporting that he had vomited. (Progress Note; Def.'s 56.1 at ¶ 7.) Nurse Practitioner Teer examined plaintiff and conducted an EKG. (Def.'s 56.1 at ¶ 8.) During the exam, plaintiff vomited blood. (*Id.*) Teer issued a request that plaintiff be transported immediately to NUMC by ambulance. (*Id.*) Plaintiff was taken to NUMC where he was seen in the emergency room at 12:30 p.m., and admitted to the hospital. (*Id.* at ¶ 9.) Multiple medical records indicate that plaintiff was admitted to NUMC around 12:30 p.m. on October 18, 2008.

Plaintiff's account that he was seen five minutes after his initial dizzy spell and then promptly sent to the hospital actually presents defendant's actions in a more positive light than if approximately four hours passed between plaintiff's two visits to Medical. Nonetheless, regardless of whether the Court credits the plaintiff's or the defendant's timeline of events, no rational jury could find that defendant was deliberately indifferent to a serious medical need when it did not refer plaintiff to the hospital until after plaintiff's second visit to Medical.

With respect to the objective element of the test for deliberate indifference, the uncontroverted evidence demonstrates that Intal provided reasonable care to plaintiff when he sent plaintiff back to his cell after the plaintiff had vomited a clear liquid and complained of dizziness. *See Salahuddin*, 467 F.3d at 279-80 ("As the Supreme Court has noted, the prison official's duty is only to provide reasonable care. Thus, prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable under the Cruel and Unusual Punishments Clause[.]" (citations omitted) (alteration in *Salahuddin*)). Based upon the uncontroverted facts, Intal's determination that plaintiff could return to his cell and report back to Medical if he continued to feel dizzy constituted a reasonable exercise of medical judgment. "An inmate is not entitled to treatment by every available medical alternative as long as his treatment is reasonable." *Castro-Sanchez v. New York State Dep't of Corr. Servs.*, 10 Civ. 8314 (DLC), 2011 U.S. Dist. LEXIS 140003, at *29 (S.D.N.Y. Dec. 6, 2011) (citing *Estelle*, 429 U.S. at 107). Even assuming *arguendo* that Intal's decision not to provide further treatment to plaintiff was unreasonable, a reasonable jury could not conclude that Intal was deliberately indifferent to a serious medical need. *See Estelle*, 429 U.S. at 105-06 ("[A]n inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")

With respect to the subjective element of the test for deliberate indifference, there is no evidence from which a rational jury could find that the NHCC officials acted with a "sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280 (citation omitted). Intal's notes indicate that plaintiff was not dizzy "at present" when Intal evaluated him on October 18, 2008. Accordingly, Intal advised plaintiff to return to the clinic if the dizziness persisted. Plaintiff asserts, however, that he was still dizzy when he left Medical and returned to his cell. (Pl.'s Dep. at 21.) Even assuming that plaintiff's version is correct, no rational

jury could conclude that Intal "fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." *Id.*; *see Johnson v. McDonough*, 278 F. App'x 866, 868-69, 871 (11th Cir. 2008) (per curiam) (granting summary judgment to defendants on deliberate indifference claim where inmate reported headache, dizziness, and nausea after being hit on the head, and, after personnel released inmate from medical observation on multiple occasions, inmate ultimately died of an intracerebral hemorrhage).

Moreover, when plaintiff complained again of dizziness, corrections officials immediately returned him to Medical. As Teer examined the plaintiff, plaintiff vomited blood. On Teer's orders, plaintiff was immediately transported to NUMC by ambulance. He was seen in the emergency room at 12:30 p.m., admitted to the hospital, and ultimately discharged with a diagnosis of gastrointestinal bleeding and osephegitis and prescribed Nexium. As the record reflects, even under plaintiff's version of the events, Teer reacted immediately to plaintiff's illness by requesting an ambulance and sending plaintiff to the hospital.

In sum, given the uncontroverted evidence in the record, the Court concludes that no rational jury could conclude that defendant acted with deliberate indifference to plaintiff's medical needs. Accordingly, the Court concludes that summary judgment is warranted on the merits in favor of defendant on plaintiff's Section 1983 claims.

4. Municipal Liability against NHCC

Liberally construing the complaint, plaintiff alleges that NHCC is liable under Section 1983 pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690-91 (1978). As set forth below, his claim also cannot survive summary judgment because there is no basis for *Monell* liability.

Under *Monell*, a municipal entity may be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." 436 U.S. at 694; *see also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). A policy, custom, or practice of the municipal entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson*, 375 F.3d at 226 (quoting *Kern*, 93 F.3d at 44).

However, a municipal entity may only be held liable where the entity itself commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *see also Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("A municipality may not be held liable in an action under 42 U.S.C. § 1983 for actions alleged to be unconstitutional by its employees below the policymaking level solely on the basis of *respondeat superior*."); *Vippolis v. Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("A plaintiff who

seeks to hold a municipality liable in damages under section 1983 must prove that the municipality was, in the language of the statute, the 'person who . . . subjected, or cause[d] [him] to be subjected,' to the deprivation of his constitutional rights." (quoting 42 U.S.C. § 1983)).

Because plaintiff has failed to demonstrate any Eighth Amendment violations as to any particular NHCC employee (for the reasons discussed *infra*), he cannot demonstrate that constitutional violations occurred pursuant to a custom or policy at NHCC. *See Mercado v. City of New York*, 08 Civ. 2855 (BSJ)(HP), 2011 U.S. Dist. LEXIS 140430, at *26 (S.D.N.Y. Dec. 5, 2011) (because there was "no independent, underlying" Eighth Amendment violation, there was "no basis for municipal or supervisory liability"). In any event, plaintiff has not provided any evidence of an alleged policy, practice or custom at NHCC that deprived plaintiff of his constitutional rights. Accordingly, the Court grants summary judgment to NHCC on this claim.

IV. CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for summary judgment on plaintiff's Section 1983 claims.[8] The Clerk of the Court shall enter judgment accordingly and close the case. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 11, 2012
    Central Islip, NY

\* \* \*

Plaintiff is proceeding *pro se*, Glen Miller, 17 Creek Street, Montego Bay, WI, Jamaica. Nassau Health Care Corporation is represented by Edward J. Troy and Alexander V. Sansone, Law Office of Edward J. Troy, 44 Broadway, Greenlawn, NY 11740.

---

[8] Although plaintiff appears only to be alleging federal claims under Section 1983, to the extent his complaint, liberally construed, could be attempting to assert a state law claim, the Court declines in its discretion to exercise supplemental jurisdiction over any such state claims given that no federal claim survives summary judgment.